IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM A. MALONE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 3:13-cv-00124-NJR-PMF |
| DONNA S. HEIDEMANN, | ) ) ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

This case is before the Court for findings of fact and conclusions of law. Plaintiff William Malone filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment while confined at Pinckneyville Correctional Center. Specifically, Malone claims that defendant Donna Heidemann posted information about his criminal conviction and about the criminal background of his father on a bulletin board in the prison's law library, deliberately exposing him to threats and harassment from other inmates. In the absence of a jury demand, testimony and exhibits were collected at evidentiary hearings held on February 10 and June 22, 2015. Those hearings were held pursuant to *McCarthy v. Bronson*, 500 U.S. 136 (1991) and Local Rule 72.1(a). Upon consideration of the evidence, the following findings of fact and conclusions of law are proposed:

### Proposed Findings of Fact

(1). Plaintiff William Malone is an inmate in the custody of the Illinois Department of Corrections and was confined at Pinckneyville Correctional Center beginning in June, 2010. Defendant Donna Heidemann was employed by the Illinois Department of Corrections at the Pinckneyville facility as the law librarian until her retirement on January 31, 2013.

(2). Prior to October 31, 2010, plaintiff was aware that the defendant held the post of law librarian but did not have any adverse relationship with her.[1]

(3). On October 31, 2010, plaintiff visited the prison's law library for the purpose of performing legal work on his criminal case. Malone was appealing convictions out of Peoria County for residential burglary, criminal sexual assault, and a weapons offense.

(4). When he arrived at the law library on October 31, 2010, plaintiff noticed that information describing events leading to his convictions and his father's conviction had been posted on a law library bulletin board. One item appeared to be newspaper article and revealed to interested inmate visitors that "William Malone" (plaintiff) had been convicted of residential burglary, criminal sexual assault, and a weapons charge and that "William Malone" (plaintiff's father) had been accused of being a pedophile with victims under six years old. Another article appeared to be an official court document summarizing plaintiff's criminal proceeding.

(5). Plaintiff does not know who posted the information or how long it had been posted.[2] The items were stapled to the board, not secured under glass.

(6). Plaintiff was surprised to see the information posted. At the time, he believed publication of information regarding an inmate's criminal background violated prison policy.

(7). On October 31, 2010, plaintiff approached defendant when she was sitting behind a computer desk and inquired whether there was a reason his cases were posted on the bulletin board. Heidemann initially responded "I don't know what you're talking about."[3] When

---

[1] Plaintiff's descriptions of his relationship with Heidemann as of October 31, 2010 varied. This paragraph is based on testimony that seemed genuine, not crafted, and is accepted as more credible.

[2] Plaintiff's testimony on this point varied. The in-court testimony appeared to be more focused and is accepted as more credible.

[3] Plaintiff's testimony regarding Heidemann's initial response varied. This paragraph is based on testimony that seemed genuine, not crafted, and is more credible.

2

plaintiff asked Heidemann if he could take the cases down, she instructed him not to "touch anything on my board." Plaintiff obeyed Heidemann's instruction.

(8).     In 2010, Heidemann was recovering from an emotional incident involving a hostage/death in the prison's law library.

(9).     In 2010, a number of inmates were assigned to perform tasks in the law library under Heidemann's supervision. Inmate workers had access to the law library's bulletin board. While it is unlikely that inmate workers would receive permission to use the library computer to download information from the internet, inmate workers did have opportunities to use the library computer without Heidemann's knowledge. It is unlikely that Heidemann would tolerate an inmate library worker caught posting unauthorized material on the bulletin board. Heidemann might have distributed computer generated information to inmate workers.

(10).    At some point, inmates Sergio Moyett and Julio Hernandez extorted money from plaintiff. Both were affiliated with the Latin Kings prison gang. At times, those inmates resorted to physical force. Plaintiff did not initially report their misconduct to prison authorities. Grievance records suggest that Malone's conflicts with Hernandez predate the October 31, 2010, incident in the law library.

(11).    On one occasion when inmate Hernandez physically assaulted plaintiff, he struck plaintiff in the eye and threw plaintiff to the floor. Hernandez may have been motivated to harm plaintiff because plaintiff would not or could not pay a sum of money demanded by Hernandez and/or Moyett. The incident may also have occurred because Hernandez thought Malone was a pedophile. The incident may also have occurred for some other reason. The incident occurred in September or October, 2011.

(12). After the Hernandez assault, plaintiff elected to cooperate with an official investigation regarding his safety. He formed the impression that printed information about his criminal case had been found and confiscated from a cell occupied by inmate Hernandez and/or Moyett. After plaintiff cooperated with the investigation, he had problems with numerous inmates affiliated with the Latin Kings prison gang.

(13). Early in 2012, approximately four months after the September/October, 2011, assault by Hernandez, plaintiff was physically assaulted by inmate Moyett. Plaintiff sustained a bloody lip.

(14). At some point, inmates affiliated with the Black Gangster Disciples prison gang and the Vice Lords prison gang extorted money and assets from plaintiff in exchange for their efforts to protect him from hostile inmates affiliated with the Latin Kings prison gang.

(15). For periods of time, plaintiff avoided hostile inmates by seeking protective custody, by restricting his movements, by purchasing commissary items for gang members, and by providing reading and writing assistance to gang members without charging a fee.

(16). It is possible that Hernandez, Montoya, and other inmates housed at Pinckneyville obtained information about plaintiff's criminal cases by communicating with members of the general public though the U.S. Postal Service, even if a prison policy prohibited receipt of that type of correspondence.[4]

(17). It is possible that correctional officers working at Pinckneyville learned details about plaintiff's criminal case by communicating with individuals working in law enforcement in Peoria County, and shared that information with Hernandez, Moyett, or other inmates.

---

[4] Plaintiff's testimony varied on this point. The suggestion that prison mailroom employees effectively prevented the introduction of information regarding his criminal background and that of his father is not particularly credible, considering that Malone does not have personal knowledge of mailroom work.

(18). Plaintiff obtained photocopies of his criminal cases from a correctional counselor and kept that information in his cell.

(19). Inmate Derrick Searcy has been confined at Pinckneyville Correctional Center for at least 3 years. During this time, he formed the impression that plaintiff was a serial sex offender who was disliked by inmates and staff.

(20). Inmate Raymond Ramsey's testimony was not credible. It was apparent from his demeanor that he was not motivated to provide truthful information.

(21). Inmate Andre Crosswhite's did not testify. It was apparent from his demeanor that he was not motivated to provide information favorable to Malone.

(22). Inmate Hosea Fort arrived at the Pinckneyville facility in February, 2011. Information about plaintiff's father's criminal background was not on the law library bulletin board at that time, but was posted for about two weeks in March, 2011. Fort overheard inmates and officers discussing the information. Fort felt that his cooperation in this litigation compromised his safety at the facility.

(23). Inmates James Sims and Christopher Harris were assigned to attend plaintiff when he required assistance moving to the dining hall, housing units, and law library. They overheard inmates direct remarks to plaintiff about his actual or perceived criminal background as including sexual assault with minor victims. The remarks were of a threatening and harassing nature. Harris observed inmates and staff circulate a document which appears to have described plaintiff's father's criminal background. Harris feels that plaintiff's safety is at risk due to the nature of the rumors. Sims has been at Pinckneyville since approximately 2007 and Harris has been there since early 2011.

(24). Defendant Heidemann's deposition testimony, given on April 24, 2015, was not particularly credible. Heidemann had serious health concerns. Her memory was poor and her remarks were often confused, coached, or non-responsive.

## Proposed Conclusions of Law

(1).  This Court has subject matter jurisdiction over the dispute between the parties. Venue in this district is proper.

(2).  In order to succeed on his § 1983 claim, Malone must establish the following elements by a preponderance of the evidence. First, the conduct at issue must have been taken under color of state law, and second, the conduct must have deprived Malone of a right, privilege, or immunity guaranteed by the Constitution or laws of the United States. *Larsen v. Beloit*, 130 F.3d 1278, 1282 (7th Cir. 1997).

(3).  Donna Heidemann's work at Pinckneyville Correctional Center's law library was under color of state law.

(4).  To show that he was deprived of a right protected by the Eighth Amendment, Malone must prove that (1) the harm suffered was objectively, sufficiently serious and a substantial risk to his health and safety, and (2) Heidemann was deliberately indifferent to Malone's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

(5).  Plaintiff's testimony at the evidentiary hearing was not particularly credible.

(6).  Malone has not sustained his burden of proving by a preponderance of the evidence that Heidemann posted information about Malone or about Malone's father on the law library bulletin board.

(7). Malone has not sustained his burden of proving that Heidemann drew the inference that information posted on the law library bulletin board presented a substantial risk of serious harm to Malone.

(8). Malone has not sustained his burden of proving by a preponderance of the evidence that Heidemann disregarded a known substantial risk to Malone's safety. Heidemann's failure to promptly intervene to remove information from the law library bulletin board was negligent, at worst.

(9). Malone has not proved by a preponderance of the evidence that physical harm inflicted by Julio Hernandez in 2011 and by Sergio Moyett in 2012 was proximately caused by the acts or omissions of Donna Heidemann. In the absence of physical injury, Malone cannot recover damages for emotional harm. *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); 42 U.S.C. § 1997e(e).

(10). Judgment should be entered in favor of Heidemann and against Malone.

**SUBMITTED:  September 3, 2015 .**

   s/Philip M. Frazier
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**